UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEREK DEMEO,

                                    Plaintiff,          1:07-CV-1275

                    v.

JOSHUA KEAN; M.K. REYNER; DORIAN TUCKER;
PHLIP 'N SPILL, INC., Individually and doing business
as The Bayou Café,

                              Defendants.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

LUIBRAND LAW FIRM, PLLC                   KEVIN A. LUIBRAND, ESQ.
Attorneys for Plaintiff
950 New Loudon Road
Latham, NY 12110

HON. ANDREW M. CUOMO                      CHARLES J. QUACKENBUSH, ESQ.
Attorney General of the                   Asst. Attorney General
  State of New York
Attorney for Defendants Kean and Reyner
Department of Law
The Capitol
Albany, NY 12224

LEMERY, GREISLER LAW FIRM, LLC            GRETCHEN M. GREISLER, ESQ.
Attorneys for Defendants Tucker and Phlip 'N Spill
50 Beaver Street, 2d Floor
Albany, NY 12207

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION AND ORDER

## I.  INTRODUCTION

Plaintiff Derek DeMeo ("plaintiff" or "DeMeo") brings this action against the

defendants for violations of his federal and New York state constitutional rights and for

state tort claims arising from an altercation outside The Bayou Café located in Albany, New York, on December 10, 2006.  The four defendants include New York State Police officers Joshua Kean ("Kean") and M.K. Reyner ("Reyner"), Phlip 'N Spill, Inc. ("Phlip 'N Spill"), and its employee Dorian Tucker ("Tucker").

Tucker and Phlip 'N Spill have moved for partial summary judgment on the alleged section 1983 violations, New York constitutional claims, and false arrest cause of action. Kean has moved for partial summary judgment on the unlawful search and seizure, false arrest, and unlawful imprisonment claims.[1]  Reyner seeks summary judgment of all claims against him.

DeMeo opposes all motions for summary judgment and has filed a cross-motion in limine against Reyner and Phlip 'N Spill regarding the destruction of video evidence. Plaintiff's cross-motion seeks:  (1) default judgment declaring Phlip 'N Spill and Reyner liable for the destruction of material video evidence; (2) default judgment declaring that the destroyed video evidence depicted Tucker and Kean assaulting DeMeo; (3) an order precluding defendants from offering evidence at trial with respect to the videos; (4) a jury instruction acknowledging that Phlip 'N Spill and Reyner destroyed the video evidence; and (5) all costs and fees incurred by plaintiff during the course of attempting to discover and obtain the video evidence.

Oral argument was held on November 22, 2010, in Utica, New York.  Decision was reserved.

---

[1] Kean acknowledges that whether he used excessive force is not to be determined at the summary judgment stage.

## II.  FACTUAL BACKGROUND

On the evening of December 9, 2006, DeMeo and several friends drove from Schenectady to Albany for a night out.  Plaintiff consumed at least five alcoholic drinks between 7:00p.m. on December 9 and 1:00a.m. on December 10.  At approximately 2:00a.m. on December 10, 2006, plaintiff approached The Bayou Café, located on the corner of North Pearl Street and Columbia Street in Albany.  What occurred next is in dispute.

### A.  Defendants' Version of the Events

Defendants claim that DeMeo approached The Bayou Café in a group that then engaged in a verbal, and briefly physical, confrontation with another group of people.  During the confrontation, Reyner detained DeMeo's friend (Roger Press) with the assistance of Kean.  At some point thereafter, Kean attempted to disperse the agitated crowd of which plaintiff was a part.  It was at this point that plaintiff suffered injuries.

Kean denies restraining or pushing DeMeo and claims that plaintiff, who was highly intoxicated, fell into the wall of a building on his own account.  Reyner denies having any personal involvement in the alleged physical assault on plaintiff.  Tucker—a bouncer at The Bayou Café—denies any involvement in the alleged assault.

### B.  Plaintiff's Version of the Events

DeMeo maintains that he approached The Bayou Café with only one other friend as the rest of his group had previously arrived at the bar.  He denies being involved in an altercation with another group of people and asserts that when he arrived at the bar, his friend Roger Press was already being detained by police.

DeMeo alleges that shortly after his arrival outside the bar, Tucker approached him from the left and grabbed him around the neck. Kean then grabbed plaintiff as well and, together with Tucker, dragged him away from the scene, across the street, and smashed his face into the wall, causing serious physical injury. Kean then held plaintiff on the ground as he struggled to get free.

DeMeo alleges that Reyner, while admittedly not a part of the direct physical assault, eventually pulled Kean off plaintiff and instructed Tucker to leave the scene. Plaintiff was thereafter transported to the hospital by ambulance. He further claims that Reyner intimidated witnesses at the scene, falsified police reports, and destroyed evidence.

### C. __Destruction of Video Evidence__

The Bayou Café had in place a video surveillance system at the time of the incident in question. There were two cameras covering the area where plaintiff was allegedly assaulted—one located inside the bar pointing out through the front window ("Camera 2") and one mounted on a building across the street pointing towards the front of the bar ("Camera 11"). See Dkt. No. 83, Ex. A, at 4–11. These cameras were reportedly purchased and installed by the owner of The Bayou Café, Ralph Spillenger ("Spillenger"). See id. "All personnel" of The Bayou Café had access to an office inside the bar where the images from the surveillance cameras could be viewed and were ultimately stored on a computer hard drive. Dkt. No. 83, Ex. Q, at 20.

At approximately 3:00a.m. on December 10, 2006, only hours after the incident, Reyner reportedly viewed the video surveillance with Spillenger. Dkt. No. 83, Ex. A, at 11. On December 22, 2006, the Supreme Court, Albany County, ordered the preservation of

all video recordings relating to the incident.  Dkt. No. 83, Ex. F.  Reyner again viewed the

video around Christmas 2006 while at The Bayou Café on a separate investigation.  Dkt.

No. 70, Ex. 3, at 5, 15–16.  On January 22, 2007, the Supreme Court, Albany County,

ordered that the video recordings be filed with that court and a copy be provided to

plaintiff's counsel.  Dkt. No. 83, Ex. I.

On February 21, 2007, DeMeo's private investigator, Theresa Balfe ("Balfe"),

viewed the videos and noted that critical sections had been "cut" from Camera 11, which

had the best angle to capture the incident in question.  Dkt. No. 83, Ex. C, at 137.

Specifically, Balfe testified that after plaintiff is seen approaching the bar, the time stamp

on the video skipped from 2:05.43a.m. to 2:05.55a.m.—indicating that 12 full seconds

were missing.  Id.  Balfe claimed that the video also skipped from 2:05.57a.m. to

2:06.13a.m.—indicating a loss of 16 seconds.  Id. at 106.  By comparing the times with the

Camera 2 images, Balfe concluded that these sections of video corresponded with the

exact moments that plaintiff was allegedly assaulted.  Id. at 137–38.  Finally, Balfe

indicated that the Camera 11 video was also missing 13 seconds between 2:15.38a.m.

and 2:15.51a.m., when DeMeo was loaded into the ambulance.  Id. at 104.  These three

gaps, totaling approximately 41 seconds, were the only gaps noted in the Camera 11

video.  See id. at 164–65.

It is undisputed that at some point after February 2007 the video recordings were

lost or destroyed.  Plaintiff concludes that Reyner and Phlip 'N Spill together partially

erased and ultimately destroyed this evidence.  The defendants deny deliberately

destroying any evidence and maintain that the video surveillance system was unreliable

and of poor quality.  Defendants claim that the video was inadvertently recorded over by

Spillenger's wife.

On October 10, 2007, DeMeo moved for a contempt order in the Supreme Court,

Albany County, for defendants' failure to comply with the December 22, 2006, and

January 22, 2007, orders.  Dkt. No. 83, Ex. L.  In an order dated January 2, 2009, the

Supreme Court found that Phlip 'N Spill's lack of compliance was not willful and denied

DeMeo's motion for a finding of criminal and civil contempt.  Dkt. No. 83, Ex. J.  Plaintiff

appealed this order to the Appellate Division, Third Department, which affirmed and held

that he failed "to establish prejudice as a result of respondent's failure to preserve the

video recordings."  DeMeo v. City of Albany, 73 A.D.3d 1316, 1317 (N.Y. App. Div. 3d

Dep't 2010).

## III. DISCUSSION

### A. Summary Judgment Standard

The entry of summary judgment is warranted when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits . . . show

that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477

U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247, 106 S. Ct. 2505, 2509–10 (1986).  A fact is "material" for purposes of this inquiry

if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at

248, 106 S. Ct. at 2510; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir.

2005).  A material fact is genuinely in dispute "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim.  Anderson, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4. The failure to meet this burden warrants denial of the motion.  Id.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Id. at 250, 106 S. Ct. at 2511; Fed. R. Civ. P. 56(e).

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553.  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

**B. Section 1983 and New York State Constitutional Claims**

**1. Defendants Tucker and Phlip 'N Spill**

Tucker and Phlip 'N Spill argue that they did not act under the color of state law.  A section 1983 claim requires a showing of state action.  Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003).  To satisfy the state action element when private defendants are involved, a plaintiff must establish that the alleged unconstitutional conduct is "fairly attributable" to the state.  Id. Conduct is fairly attributable to the state when there

is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Id.

In general, the acts of private security guards do not constitute state action under section 1983.  See Prowisor v. Bon-Ton, Inc., 232 F. App'x 26 (2d Cir. 2007) (affirming a grant of summary judgment to a private security guard who detained a shoplifter until the police arrived to make an arrest).  However, state action may be found "where the private actor operates as a willful participant in joint activity with the State or its agents." Tancredi, 316 F.3d at 313 (internal quotation marks omitted).

DeMeo maintains that Tucker acted as a willful participant with Kean, a state police officer, in the joint activity of detaining and assaulting him.  The record provides sufficient evidence for a reasonable trier of fact to conclude that Tucker did more than merely alert the police or detain plaintiff until the police arrived.  In his deposition, Tucker acknowledged that on his first day of work he was instructed not to involve himself in incidents outside of the bar because "once they are outside of the Bayou, let the police deal with it outside."  Dkt. No. 83, Ex. B, at 20.  However, Balfe testified that the surveillance video she viewed depicted Tucker grabbing, holding, and pulling plaintiff as Kean grabbed him from behind in the street outside The Bayou Café.  Dkt. No. 83, Ex. C, at 87–91.  Further, Kevin Press, the brother of plaintiff's friend Roger Press, testified that he witnessed a bouncer grab plaintiff and "help" Kean force him across the street.  Dkt. No. 70, Ex. 7, at 27–30.  Kean's own Incident Review report indicates that "[t]hree males in black t-shirts with 'Bayou Café' written on them also ran across the street in front of me to help break up the fight."  Dkt. No. 83, Ex. O.

Viewing these facts in the light most favorable to the non-moving party, DeMeo, a genuine issue of material fact remains as to whether Tucker willingly participated in a joint activity with a state agent—thus constituting state action for section 1983 purposes. These factual assertions also satisfy the state action requirement for the New York constitutional claims, which is "more flexible" than the federal standard.  See Sharrock v. Dell Buick-Cadillac, Inc., 45 N.Y.2d 152, 160 (N.Y. 1978) (noting that "the absence of any State action language [in the Due Process Clause of the New York Constitution] simply provides a basis to apply a more flexible State involvement requirement than is currently being imposed . . . with respect to the Federal provision").

Accordingly, Tucker and Phlip 'N Spill's motion for summary judgment on the section 1983 and pendent New York state constitutional claims will be denied.

### 2.  Defendant Kean

Kean seeks summary judgment of the unlawful search and seizure, false arrest, and unlawful imprisonment claims—arguing that DeMeo was never seized, arrested, or confined.

Unlawful Search and Seizure

To determine if a person was "seized" for purposes of the Fourth Amendment, the pertinent inquiry is "whether a reasonable person would have thought he was free to leave the police encounter at issue."  U.S. v. Newton, 369 F.3d 659, 672 (2d Cir. 2004).

After viewing the evidence in the light most favorable to the plaintiff, it becomes clear that a genuine issue of material fact remains as to whether he was seized by Kean and Tucker.  DeMeo asserts that he was forcibly grabbed by these defendants, propelled across the street, and slammed into a wall.  Dkt. No. 70, Ex. 1, at 79–92.  Further, Kevin

Press testified that after slamming DeMeo into the wall, Kean held him down on the ground by putting his knee on the back of plaintiff's head.  Dkt. No. 70, Ex. 7, at 30.  Kevin Press also indicated that at one point plaintiff was handcuffed.  Id. at 32.  A reasonable person would not feel free to leave the area after an officer grabbed him, forced him across a street, slammed him into a wall, held him down on the sidewalk, and handcuffed him.

Accordingly, Kean's motion for summary judgment as to the unlawful search and seizure claims (both state and federal) will be denied.

Unlawful Imprisonment and False Arrest

Under New York law, the torts or false arrest and unlawful imprisonment are "synonymous."  Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991).  Additionally, a section 1983 claim for false arrest "is substantially the same as a claim for false arrest under New York law."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  In New York, the elements of false arrest are:  "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks omitted).  Notably absent is a requirement that the plaintiff be formally arrested or charged with a crime.  See Warheit v. City of New York, 271 F. App'x 123, 124 n.2 (2d Cir. 2008) (although plaintiff was not actually arrested or charged with a crime, he was "in custody" for purposes of the false arrest claim when an officer took him by the arm and escorted him out of a room).

A section 1983 claim for false arrest is grounded in the Fourth Amendment's protection from unreasonable seizures, including the right not to be taken into custody

without probable cause.  See Weyant, 101 F.3d at 852.  As noted immediately above, a reasonable jury could find that Kean and Tucker seized DeMeo for purposes of the Fourth Amendment.  Kean has never argued that his actions were based on probable cause and were therefore "privileged."  Thus, an issue of material fact remains as to whether Kean and Tucker subjected plaintiff to a false arrest by seizing and confining him.

Accordingly, Tucker and Kean's motion for summary judgment as to the unlawful imprisonment and false arrest claims (both state and federal) will be denied.

### 3. Defendant Reyner

Reyner seeks summary judgment of all section 1983 claims against him, arguing that he was not personally involved.  For reasons explained below, these claims must be separated into those relating to the alleged physical assault and those relating to Reyner's conduct thereafter.

Excessive Force, Unlawful Search and Seizure, False Arrest, and Unlawful Imprisonment Claims

The personal involvement of a defendant is an essential element of a section 1983 claim.  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  The personal involvement of police officers encompasses an "affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Noga v. Potenza, 221 F. Supp. 2d 345, 351 (N.D.N.Y. 2002) (Homer, M.J.) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir.), reh'g denied, 27 F.3d 29 (2d Cir. 1994)).

In order to be held liable for failing to intercede, an officer must have a "realistic opportunity to intervene to prevent the harm."  Id.  "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an

issue of fact for the jury unless . . . a reasonable jury could not possibly conclude otherwise." Anderson, 17 F.3d at 557.  Courts have dismissed failure to intercede claims against officers when the action was "sudden and brief" and thus did not afford a realistic opportunity to intervene.  See O'neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988) (officer who stood nearby as another officer struck plaintiff three times "in rapid succession" did not have a realistic opportunity to intercede); Tafari v. McCarthy, 714 F. Supp. 2d 317, 342 (N.D.N.Y. 2010) (Hurd, J. and Lowe, M.J.) (a "liquid throwing incident" that lasted a matter of seconds did not give defendant an opportunity to intervene on behalf of the plaintiff).

Here, DeMeo does not claim that Reyner physically touched him during the alleged assault, but rather that he failed to prevent Tucker and Kean from harming him.  However, given the sudden, brief, and unexpected nature of their alleged conduct, Reyner lacked a realistic opportunity to intervene.  Even viewing the facts in the light most favorable to plaintiff, Reyner was across the street detaining Roger Press when Tucker and Kean propelled him into the wall.  In fact, the record indicates that when Reyner saw the commotion on the other side of the street, he responded to prevent further aggression by Tucker and Kean.  Therefore, there is insufficient evidence for a reasonable jury to conclude that Reyner had a realistic opportunity to intervene in the assault against plaintiff.

Accordingly, Reyner's motion for summary judgment of the section 1983 claims relating to the assault will be granted.

<u>Denial of Access to the Courts</u>

DeMeo asserts that Reyner violated his right to access the courts by intimidating witnesses, falsifying reports, and erasing video evidence.[2]

To sustain a cause of action for denial of access to the courts, a plaintiff must show that "(1) the defendant acted deliberately and maliciously, and (2) the plaintiff suffered an actual injury." <u>Graham v. City of Albany</u>, No. 1:08-CV-892, slip op. at 8 (N.D.N.Y. Nov. 23, 2009) (Treece, J.).  A plaintiff must assert more than mere allegations that the "false and deceptive information and concealment foreclosed Plaintiff from effectively seeking adequate legal redress."  <u>Christopher v. Harbury</u>, 536 U.S. 403, 418, 122 S. Ct. 2179, 2188 (2002).  Here, plaintiff suggests that Reyner's conduct has hindered his ability to bring civil claims and/or recover fully for his injuries.

DeMeo points out inconsistencies between Reyner's official report and his deposition testimony regarding the events on December 10, 2006, and concludes that the report must therefore have been falsified.  Even assuming the report was deliberately falsified, plaintiff has failed to explain how this has precluded his underlying claims or diminished his ability to recover for his injuries.  Plaintiff has been able to timely file the present claim, engage in discovery, and depose witnesses.  If anything, Reyner's inconsistent report and testimony will enable plaintiff to impeach Reyner's credibility at trial.  Accordingly, plaintiff will not be permitted to pursue a denial of access to the courts claim based on the alleged false report.

---

[2] Nowhere in plaintiff's amended complaint does he raise the issue of denial of access to the judicial system.  However, the amended complaint indicates that the rights deprived by the defendants include due process of law.  Since the Supreme Court has grounded the right of access to the courts in, inter alia, the Due Process Clause of the Fifth and Fourteenth Amendments, DeMeo should be permitted to pursue this claim.  See <u>Christopher v. Harbury,</u> 536 U.S. 403, 415 n.12, 122 S. Ct. 2179, 2187 (2002).

DeMeo maintains that Reyner erased parts of the surveillance video or conspired to do so.  While Reyner flatly refutes this allegation, there is sufficient circumstantial evidence to allow this fact to be determined by the jury.  Reyner viewed the video twice—almost immediately after the incident and a second time with an unidentified employee of The Bayou Café just days after a state court ordered that all video evidence be preserved.  Shortly thereafter, plaintiff's investigator viewed the video and noticed that the time stamp indicated certain portions totaling 41 seconds had been skipped over or "cut" out.  Dkt. No. 83, Ex. C, at 137.  While there is admittedly no direct evidence that Reyner himself erased parts of the video, when the evidence is viewed in the light most favorable to the plaintiff there remains a genuine issue of material fact as to whether Reyner had a part in the partial erasure of this critical evidence.  The same circumstantial evidence also creates an issue of fact as to whether or not Reyner had a role in the ultimate disappearance of the video.  If he knew or should have known of the court order, as a police officer, he had a duty to take all reasonable steps to see that the complete video was preserved.

DeMeo also alleges that Reyner intimidated witnesses by ordering them to leave the scene or face arrest.  In his deposition, Reyner admitted to escorting one witness away from the scene after he began yelling about "police brutality" and "Rodney King." Dkt. No. 70, Ex. 3, at 55.  Reyner explained, "I told him I was going to arrest him for inciting a riot."  Id.  Plaintiff argues that this prevented him from gathering material evidence from such unidentified witnesses to be used at trial against Reyner's partner. Reyner counters that he dispersed the agitated crowd for public safety reasons and not to frustrate plaintiff's ability to obtain eyewitness accounts.

Given these opposing explanations, an issue of material fact exists as to whether Reyner dispersed the crowd in an effort to deliberately and maliciously frustrate DeMeo's ability to successfully pursue his claims.  Further, there is sufficient factual support in the record to show that the lack of eyewitness accounts will cause an actual injury to plaintiff's claims.  Without video of the incident, this case will likely turn on witness testimony.  If critical witnesses were intimidated by Reyner and are therefore unavailable to plaintiff, his ability to prove his case and disprove the defendants' theory that he fell into the wall as a result of his own intoxication will suffer.

Accordingly, Reyner's motion for summary judgment regarding the denial of access to the courts claim will be denied, but only as regarding his role in the alleged partial erasure or complete destruction of the video and witness intimidation.

## C.  Section 1983 Conspiracy Claim

To support a section 1983 conspiracy claim, a plaintiff must establish:  "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Ciambriello v. County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002) (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)).  A plaintiff must assert more than "conclusory, vague or general allegations of conspiracy" and instead provide a factual basis to show "a meeting of the minds" between the state actor and the private party. Loria v. Butera, No. 5:09-CV-531, slip op. at 6 (N.D.N.Y. Sept. 29, 2010) (Scullin, J.).[3]

---

[3] Any allegation that Kean and Reyner conspired together would be barred by the intra-corporate conspiracy doctrine, which states that "officers, agents and employees of a single corporate entity are legally incapable of conspiring together."  Freeman v. Santos, No. 9:09-CV-414, slip op. at 3 (N.D.N.Y. Mar. 15, 2010) (Scullin, J.) (internal quotation marks omitted).

### 1. Defendants Tucker and Kean

DeMeo asserts that Tucker and Kean formed a conspiracy to violate his constitutional rights through their overt acts of assaulting him. Although the alleged joint use of force arguably satisfies the second and third elements of conspiracy, DeMeo fails to identify how and when Tucker and Kean engaged in a "meeting of the minds" to form the conspiracy. According to the record, as viewed in the light most favorable to the plaintiff, Tucker was restraining plaintiff by himself when Kean arrived on scene. Without any discussion, offer to assist, request for assistance, or other indication of an agreement between he and Tucker, Kean proceeded to become involved in the physical restraint and assault. Therefore, plaintiff has failed to support his claim that Tucker and Kean conspired to violate his constitutional rights.

### 2. Defendants Reyner and Phlip 'N Spill

DeMeo claims that Phlip 'N Spill conspired with Reyner to deprive him of his constitutional rights by erasing and destroying the video recordings. It is undisputed that Phlip 'N Spill failed to adequately preserve, and ultimately destroyed, the video recordings. It is also clear that Reyner viewed the videos twice—once hours after the incident and once around Christmas 2006. Dkt. No. 83, Ex. A, at 11; Dkt. No. 70, Ex. 3, at 5. The second time he viewed the video, Reyner was accompanied by an unknown employee of The Bayou Café. Dkt. No. 70, Ex. 3, at 11. On February 21, 2007, plaintiff's private investigator viewed the video and noticed that critical parts had been erased or "cut." Dkt. No. 83, Ex. C, at 73, 97. As noted above, this is sufficient circumstantial evidence to permit a jury to determine whether Reyner conspired with Phlip 'N Spill to partially erase and/or destroy the video evidence.

Accordingly, defendants Reyner and Phlip 'N Spill's motion for summary judgment regarding the section 1983 conspiracy claim will be denied.

### D. **Plaintiff's Cross-Motion In Limine**

Plaintiff's cross-motion regarding the alleged spoliation of evidence will be considered as it pertains to Reyner and Phlip 'N Spill.  Defendants argue that DeMeo's cross-motion in limine is barred by res judicata, collateral estoppel, and the Rooker-Feldman doctrine because it concerns the same claims and issues addressed in the Supreme Court, Albany County, and on appeal to the Third Department.  Defendants are wrong.

#### 1.  Res Judicata

A federal court must give the same preclusive effect to a state court's order that a New York state court would.  O'Connor v. Pierson, 568 F.3d 64, 69 (2d Cir. 2009).  New York has adopted the "transactional approach" to res judicata which bars a later claim that arises out of the same "factual grouping" as an earlier claim—regardless of whether the later claim is based on a different legal theory or seeks different relief.  Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir. 1986).  However, this bar will not be applied "if the initial forum did not have the power to award the full measure of relief sought in the later litigation."  Id.

Although DeMeo's cross-motion arguably arises from the same factual grouping, he seeks relief that was unavailable in the state court proceedings.  For example, he requests an order precluding the introduction of evidence pertaining to the video recordings and an adverse jury instruction relating to the destruction of the evidence.  Clearly, the state

courts could not have granted such a request that is applicable in federal court. Therefore, plaintiff's cross-motion is not barred by the doctrine of res judicata.

### 2.  Collateral Estoppel

Collateral estoppel bars the re-litigation of an issue if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding."  Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995).

In the state proceeding, DeMeo sought a civil and criminal contempt order against defendants.  This required a showing of willful disobedience of a lawful court order, accompanied by prejudice.  Dkt. No. 83, Ex. J.  In order to succeed on his current federal spoliation claim, plaintiff must establish that:  (1) the defendant was under an obligation to preserve the evidence; (2) the evidence was destroyed with a culpable state of mind; and (3) the evidence destroyed was relevant to the plaintiff's claim or defense.  Byrnie v. Town of Cromwell, 243 F.3d 93, 109 (2d Cir. 2001).  The "culpable state of mind" requirement is satisfied by a showing of simple negligence.  Wade v. Tiffin Motorhomes, Inc., 686 F. Supp. 2d 174, 194–95 (N.D.N.Y. 2009) (Suddaby, J.) (citing Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002)).

The two issues in question are not identical because the state court proceeding required DeMeo to establish that the defendants acted willfully while the current claim requires mere negligence.  Further, the state court proceeding required plaintiff to show he was prejudiced by the loss of evidence, but the federal spoliation claim only requires a showing that the evidence was relevant.  Therefore, plaintiff's cross-motion is not barred by the doctrine of collateral estoppel.

### 3.  **Rooker-Feldman Doctrine**

The Rooker-Feldman doctrine effectively precludes lower federal courts "from exercising appellate jurisdiction over final state-court judgments." Lance v. Dennis, 546 U.S. 459, 463, 126 S. Ct. 1198, 1201 (2006).  The Supreme Court has cautioned that this doctrine must be applied narrowly and be "confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Id. at 464, 126 S. Ct. at 1201 (internal quotation marks omitted).  The Rooker-Feldman doctrine applies if the defendant can show four things:  (1) the plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff requests the district court to review and reject the state court judgment; and (4) the state court judgment was rendered before the proceedings commenced in the district court.  V.S. v. Muhammad, 595 F.3d 426, 430 (2d. Cir. 2010).

While DeMeo "lost" in state court by virtue of having his request for a contempt finding denied, he neither complains of injuries caused by the state court judgment nor invites the district court to review and reject that judgment.  Further, the current proceeding commenced when plaintiff filed his complaint in district court on December 7, 2007—well before the Supreme Court of Albany County rendered judgment on January 2, 2009.  Therefore, the Rooker-Feldman doctrine does not strip the district court of jurisdiction to consider plaintiff's cross-motion.

### 4.  **Merits of Plaintiff's Cross-Motion**

As explained above, to succeed on his spoliation claim, DeMeo must establish that: (1) Reyner and Phlip 'N Spill were under an obligation to preserve the video evidence; (2) the evidence was destroyed with a culpable state of mind; and (3) the evidence destroyed

was relevant to the plaintiff's claim or defense.  <u>See</u> <u>Byrnie</u>, 243 F.3d at 109.  Phlip 'N Spill acknowledges that the first element is clearly established by the preservation order of December 22, 2006, and the January 22, 2007, order to file the video recordings with the court.  Further, although Reyner was not specifically named in the state court's preservation order, it is reasonable to infer that he was aware of same.  Indeed, he reportedly viewed the video at The Bayou Café only days after the state court issued the order.  It is similarly reasonable to infer that Reyner, who during his second visit asked to view the video "out of curiosity," was aware that this particular video would be relevant to any future claims arising from the incident.  <u>See</u> <u>Kronisch v. U.S.</u>, 150 F.3d 112, 126 (2d Cir. 1998) (while the obligation to preserve evidence most commonly arises from express notice that a claim has been filed, it may also arise "when a party should have known that the evidence may be relevant to future litigation"), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Rotella v.</u> <u>Wood</u>, 528 U.S. 549, 120 S. Ct. 1075 (2000).  This is particularly true in the case of Reyner as a law enforcement officer.

Regarding the second element, there is sufficient circumstantial basis to support plaintiff's claim that Reyner and/or Phlip 'N Spill willfully or intentionally destroyed the video evidence.  Moreover, there is sufficient direct evidence that Phlip 'N Spill's handling of the evidence was at least negligent.  Despite being court-ordered to preserve the recordings, it placed the hard drive containing the images on a shelf in an unsecured area to which "all personnel" had access without any notation to indicate that it should not be touched.  Dkt. No. 83, Ex. Q, at 20; Dkt. No. 70, Ex. 6.1, at 19.  Further, it did not utilize a combination safe that was located on the premises.  Dkt. No. 83, Ex. A, at 16.  It also failed to make a copy of the video or record images from the hard drive despite being

made aware that such was possible.  Id.; Dkt. No. 70, Ex. 6.1, at 28–30.  Spillenger

acknowledged that the hard drive was inadvertently "reformatted," put back into use by his

wife who was cleaning up the office, and the pertinent images were lost.  Dkt. No. 70, Ex.

6.1, at 31.

 Where the destruction of evidence was negligent, "relevance must be proven by the

party seeking the sanctions."  Wade, 686 F. Supp. 2d at 195.  For this purpose, relevance

means more than that sufficient to satisfy Rule 401 of the Federal Rules of Evidence and

instead requires "sufficient evidence from which a reasonable trier of fact could infer that

the destroyed . . . evidence would have been of the nature alleged" by the moving party.

Id. (quoting Residential Funding, 306 F.3d at 108–09).

 DeMeo maintains that the destroyed video was relevant to his claim because it

depicted Kean and Tucker grabbing him and pulling him away from the scene.  Indeed,

Balfe testified that the Camera 2 video showed plaintiff being grabbed and pulled

backward by Kean and Tucker.  Dkt. No. 83, Ex. C, at 87–91.  This is highly relevant to

plaintiff's claim since both Kean and Tucker testified that they never touched plaintiff

before he sustained his injuries.  Although plaintiff's private investigator was able to view

the Camera 2 video prior to its destruction, this does not excuse its destruction nor make it

any less relevant.  Equally relevant are the 41 seconds of footage missing from the

Camera 11 video.  Balfe's investigation indicated that the three gaps corresponded to the

exact moments that plaintiff approached the bar, was forced across the street, and was

loaded into the ambulance.  Id. at 104–06, 137–38.  Plaintiff has therefore established the

relevancy of the lost video evidence.

 Accordingly, plaintiff's cross-motion in limine will be granted.

### 5. Sanctions Against Reyner and Phlip 'N Spill

A district court has "broad discretion" to impose an appropriate sanction to remedy the spoliation.  Residential Funding, 306 F.3d at 107.  However, the sanction must be tailored to deter spoliation, place the risk of erroneous judgment on the party responsible for the destruction, and restore the prejudiced party to the position he would be in absent the destruction.  West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).

Here, although plaintiff's claim would be helped by the lost video footage, he is not at a complete loss due to the lack of this evidence.  Balfe viewed the video, testified to its content at deposition, and can be called at trial to describe what she saw.  Further, plaintiff can question Spillenger regarding the negligent handling and failure to preserve the videos.  Plaintiff also has eyewitnesses to the incident, Kevin and Roger Press, who can testify at trial.  Therefore, the complete relief plaintiff requests in his cross-motion is inappropriate.

Accordingly, plaintiff's request for default judgments and an order precluding the defendants from offering evidence at trial with respect to the video will be denied.  However, plaintiff's request for an adverse inference jury instruction against Reyner and Phlip 'N Spill will be granted, the exact language of which will be addressed at trial.  Finally, plaintiff's request for an assessment against defendants for costs and fees associated with this cross-motion and attempts to obtain the destroyed video is denied without prejudice to renew in the event plaintiff becomes entitled to attorney fees and expenses pursuant to 42 U.S.C. § 1988.

## IV. CONCLUSION

As a result of the above, it is

ORDERED, that

1.  Defendants' motion for summary judgment is GRANTED in part and DENIED in part;

2.  The section 1983 claims for excessive force, unlawful imprisonment, false arrest, and unlawful search and seizure against defendant M.K. Reyner are DISMISSED;

3.  The section 1983 conspiracy claim against defendants Joshua Kean and Dorian Tucker are DISMISSED;

4.  The following causes of action are NOT DISMISSED and remain for trial:  (1) all section 1983 and pendent New York state constitutional, false arrest, assault and battery, and negligence claims against defendants Joshua Kean, Dorian Tucker, and Phlip 'N Spill, Inc.; (2) the section 1983 and pendent New York state constitutional claim for denial of due process against defendant M.K. Reyner; and (3) the section 1983 conspiracy claim against defendants M.K. Reyner and Phlip 'N Spill, Inc.;

5.  Plaintiff's cross-motion in limine is GRANTED, however, plaintiff's relief will be limited to an adverse inference jury instruction against defendants M.K. Reyner and Phlip 'N Spill, Inc., the exact language of which will be addressed at trial.

IT IS SO ORDERED.

_____
United States District Judge

Dated:   November 30, 2010
         Utica, New York.