UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DEREK DEMEO,

        Plaintiff,    1:07-CV-1275

  v.

JOSHUA KEAN; M.K. REYNER; DORIAN TUCKER;
PHLIP 'N SPILL, INC., Individually and doing business
as The Bayou Café,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LUIBRAND LAW FIRM, PLLC<br>Attorneys for Plaintiff<br>950 New Loudon Road<br>Latham, NY  12110 | KEVIN A. LUIBRAND, ESQ. |
| HON. ERIC T. SCHNEIDERMAN<br>Attorney General of the<br>  State of New York<br>Attorney for Defendants Kean and Reyner<br>Department of Law<br>The Capitol<br>Albany, NY  12224 | CHARLES J. QUACKENBUSH, ESQ.<br>Asst. Attorney General |
| LEMERY, GREISLER LAW FIRM, LLC<br>Attorneys for Defendants Tucker and Phlip 'N Spill<br>50 Beaver Street, 2d Floor<br>Albany, NY  12207 | SCOTT R. ALMAS, ESQ. |

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff Derek DeMeo ("plaintiff" or "DeMeo") filed a civil action against defendants alleging violations of his federal constitutional rights and New York state law arising from an altercation outside The Bayou Café located in Albany, New York, on December 10, 2006.[1]  The four defendants include New York State Police officers Joshua Kean ("Kean") and Michael Reyner ("Reyner"), Phlip 'N Spill, Inc. ("Phlip 'N Spill"), and its employee Dorian Tucker ("Tucker").  Specifically, plaintiff brought the following federal claims:  (1) unlawful seizure against Kean and Tucker; (2) excessive force against Kean and Tucker; (3) deprivation of due process through witness intimidation against Kean and Reyner; (4) deprivation of due process through evidence destruction against Reyner and Phlip 'N Spill; and (5) conspiracy against Reyner and Phlip 'N Spill.  Plaintiff also brought the following state claims:  (6) false arrest against Kean, Tucker, and Phlip 'N 'Spill; (7) assault against Kean, Tucker, and Phlip 'N 'Spill; (8) battery against Kean, Tucker, and Phlip 'N 'Spill; and (9) negligence against Kean, Tucker, and Phlip 'N 'Spill.

Following a jury trial, and in accordance with the jury's verdicts, judgment was entered on September 30, 2011, dismissing all federal and state claims against Kean, Reyner, and Tucker as well as the federal conspiracy and all state claims against Phlip 'N Spill.  Judgment was entered in favor of plaintiff and against Phlip 'N Spill in the amount of

---

[1] It is assumed that the parties are familiar with the underlying facts, which are detailed in the November 30, 2010, Memorandum–Decision and Order.  See DeMeo v. Kean, 754 F. Supp. 2d 435, 440–41 (N.D.N.Y. 2010).

$110,000—$10,000 in compensatory damages for the loss of due process through evidence destruction and $100,000 in punitive damages.

Phlip 'N Spill has filed a post-trial motion seeking:  (1) an amended judgment pursuant to Federal Rule of Civil Procedure 59(e) ("Rule __") dismissing the § 1983 due process cause of action against it; (2) a judgment as a matter of law on this cause of action pursuant to Rule 50(b); or, in the alternative, (3) a new trial on this cause of action pursuant to Rule 59(a) or remittitur of the damages award.  Plaintiff has moved, pursuant to Rule 50, for a judgment in his favor regarding only those causes of action that were dismissed or, in the alternative, an order vacating the dismissal of these causes of action and ordering a new trial on them pursuant to Rule 59(a).

Oral argument was held on November 10, 2011, in Utica, New York.  Decision was reserved.

## II. DISCUSSION

### A. Phlip 'N Spill's Motions

### 1. Rule 59(e) Motion

Phlip 'N Spill seeks an amended judgment pursuant to Rule 59(e) dismissing the § 1983 due process claim against it.  Phlip 'N Spill argues that the jury's verdict is internally inconsistent because while it was found to have willfully engaged in joint activity with Reyner, these same defendants were found not to have entered into a conspiracy and Reyner was found not to have altered, destroyed, or lost the evidence.

"When confronted with a potentially inconsistent jury verdict, the court must adopt a view of the case, if there is one, that resolves any seeming inconsistency."  Turley v. Police Dep't of N.Y., 167 F.3d 757, 760 (2d Cir. 1999) (internal quotation marks omitted).

When looking for consistency, it is important to "bear in mind that the jury was entitled to believe some parts and disbelieve other parts of the testimony of any given witness." Tolbert v. Queens Coll., 242 F.3d 58, 74 (2d Cir. 2001).

The jury's verdict was not inconsistent. That Phlip 'N Spill and Reyner did not engage in a conspiracy does not preclude a finding that they nonetheless engaged in legal joint activity. Nor does the fact that Reyner did not alter, destroy, or lose the evidence necessarily mean Phlip 'N Spill could not have done so. A finding that a private person is engaged in legal joint activity with a state actor does not automatically mean the state actor is liable for any subsequent constitutionally violative conduct by the private person.

For example, a jury could determine that a bouncer is engaged in joint activity with a police officer when he and the officer both take action to break up a large fight on a street outside a bar. This completely legal activity makes the bouncer a state actor for purposes of § 1983. Now assume the bouncer uses excessive force against actor A while the officer is twenty feet away using reasonable force against actor B. The bouncer is liable under § 1983 for violating A's constitutional rights, but the police officer—whose conduct remained lawful throughout the joint activity—is not. Indeed, the bouncer and the police officer did not enter into a conspiracy to use excessive force against A, nor did the officer ever touch A.

This case is similar. It is entirely possible for Phlip 'N Spill and Reyner to engage in legal joint activity involving the video evidence without entering into an explicit conspiracy to destroy or lose it. It is equally possible that Reyner never touched the evidence, and Phlip 'N Spill destroyed or lost it at Reyner's suggestion or encouragement, or to curry

favor with the police. Therefore, the verdict is not inconsistent, and Phlip 'N Spill's Rule 59(e) motion will be denied.

### 2. **Rule 50(b) Motion**

Phlip 'N Spill next renews its motion for a judgment as a matter of law pursuant to Rule 50(b) dismissing the § 1983 due process claim against it. Phlip 'N Spill asserts there was insufficient evidence to establish that it engaged in joint activity with Reyner, making it a state actor, or intentionally destroyed or lost the evidence.[2]

"A Rule 50 motion may be granted only when, considering the evidence in the light most favorable to the non-moving party and drawing all reasonable evidentiary inferences in that party's favor, there was no legally sufficient evidentiary basis for a reasonable jury to find in favor of the non-moving party." Nimely v. City of New York, 414 F.3d 381, 390 (2d Cir. 2005) (internal quotation marks omitted).

There was sufficient circumstantial evidence for the jury to conclude that Reyner and Phlip 'N Spill engaged in joint activity and that Phlip 'N Spill deliberately destroyed or lost the evidence. Ralph Spillenger testified that a state trooper returned to The Bayou Café at 3:00 a.m. on the date of the incident and viewed surveillance images of the incident. Reyner admittedly viewed the images once more with a still-unidentified employee of Phlip 'N Spill almost immediately after Phlip 'N Spill was served with an order to preserve any and all video evidence related to the incident. Several witnesses testified that the images on the hard drive showed critical portions of the incident and may have

---

[2] In support of its assertion that it did not intentionally destroy or lose the evidence, Phlip 'N Spill continues to reference a state court's refusal to hold it in criminal contempt based on a lack of evidence that it acted "willfully." As explained at trial, reliance on this ruling is misplaced because the required standard of proof here is different than that at the state court proceeding.

been dispositive of the claims asserted. This is sufficient for a jury to reasonably infer that Reyner and Phlip 'N Spill—aware plaintiff had accused Kean of police brutality and that litigation was imminent—engaged in joint activity that ultimately resulted in the destruction or loss of the video, which the jury was permitted to infer supported plaintiff's version of the events. This joint activity made Phlip 'N Spill a state actor liable under § 1983.

Further, despite two preservation orders, Phlip 'N Spill did not place the relatively small hard drive in a large safe located in the same office. Nor did Phlip 'N Spill heed the advice of Officer Daniel Nadareski to simply videotape the screen as the images on the hard drive were displayed. This behavior supports the jury's reasonable inference that the subsequent destruction or loss of evidence was the result of, not reckless or negligent, but deliberate conduct on the part of Phlip 'N Spill.

Accordingly, Phlip 'N Spill's Rule 50(b) motion will be denied.

### 3. Rule 59(a) Motion and Request for Remitter

Finally, Phlip 'N Spill seeks a new trial on the § 1983 due process claim pursuant to Rule 59(a) or, in the alternative, remittitur of the punitive damage award which it argues is excessive.

A new trial may be granted if "the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970 (2d Cir. 1987). As explained above, the jury's verdict was supported by sufficient evidence. Therefore, it was neither erroneous nor a miscarriage of justice. Phlip 'N Spill's motion for a new trial will therefore be denied.

The amount of a punitive damages award will not be disturbed unless it "shocks the judicial conscience." Patterson v. Balsamico, 440 F.3d 104, 120 (2d Cir. 2006) (internal

quotation marks omitted).  This analysis is guided by three factors:  (1) the reprehensibility of the conduct; (2) the ratio of punitive to compensatory damages; and (3) the difference between this award and the civil penalties authorized or imposed in comparable cases.  Id. The defendant's financial situation must also be considered as punitive damages are not intended to result in the defendant's financial ruin.  Id. at 121–22.  The burden is on the defendant to show that a limitation of the award is warranted.  Id. at 122.  When assessing the first factor regarding the reprehensibility of the defendant's conduct, a court may consider whether:  (1) the conduct was violent; (2) the defendant acted with malice instead of mere negligence; and (3) the defendant engaged in repeated instances of similar misconduct.  DiSorbo v. Hoy, 343 F.3d 172, 186 (2d Cir. 2003).

First, although Phlip 'N Spill's conduct did not involve violence, it was sufficiently reprehensible to justify the punitive damages awarded.  The jury found that despite two court orders to preserve the evidence, Phlip 'N Spill deliberately destroyed or lost evidence that was critical to the issues in this case.  Phlip 'N Spill knew a civil lawsuit was imminent and could have easily secured the hard drive or videotaped the screen as the images were displayed.  The complete disregard and disrespect for the court orders is reprehensible. Moreover, as the owner of three restaurants, it is likely that Spillenger will again use surveillance footage and interact with police officers, and therefore needs to be deterred from similar misconduct.

Second, the 10:1 ratio of punitive to compensatory damages is not overly excessive.  The Supreme Court has noted that "few awards exceeding a single-digit ratio between punitive and compensatory damages" will satisfy due process.  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425, 123 S. Ct. 1513, 1524 (2003) (noting that a

4:1 ratio is "close to the line of constitutional impropriety" unless the conduct was particularly egregious). In light of the egregious destruction of critical evidence in the face of two court orders, a 10:1 ratio does not shock the judicial conscience. See Blackledge v. Carlone, 126 F. Supp. 2d 224, 230 (D. Conn. 2001) (upholding a 40:1 ratio in light of officer's repeated pepper-spraying of a handcuffed person). Phlip 'N Spill's assertion that plaintiff suffered only minor economic loss as a result of its conduct is immaterial. See Lee v. Edwards, 101 F.3d 805, 811 (2d Cir. 1996) ("[V]iolations of civil rights may very well be particularly egregious acts that result in only a small amount of economic damages or injuries whose monetary value is difficult to determine." (internal quotation marks omitted)).

Third, the punitive damage award in this case is in line with other cases involving destruction of evidence. See, e.g., Paz Sys., Inc. v. Dakota Grp. Corp., 514 F. Supp. 2d 402, 409 (E.D.N.Y. 2007) (awarding $78,319 in punitive damages). Moreover, it is consistent with punitive damages awarded in other § 1983 cases that did not involve violence. See, e.g., Phillips v. Bowen, 278 F.3d 103, 111–12 (2d Cir. 2002) (upholding $400,000 punitive damages award for § 1983 retaliation claim despite lack of economic damages or physical injury); Lee, 101 F.3d at 813 (reducing punitive damage award from $200,000 to $75,000 for malicious prosecution).

Finally, Phlip 'N Spill does not meet its burden to show the punitive damage award will cause its financial ruin. At the punitive damages proceeding and in its post-trial motion paperwork Phlip 'N Spill claimed it is in a dire financial situation. However, its owner, Ralph Spillenger, acknowledged the business earned $842,000 in gross profits in 2010.

Further, Spillenger and his wife received over $450,000 each in salary from Phlip 'N Spill in 2007.

Accordingly, Phlip 'N Spill's request for remittitur of the punitive damage award will be denied.

### B. Plaintiff's Motions

### 1. Rule 50 Motion for Judgment as a Matter of Law

Plaintiff seeks a judgment in his favor pursuant to Rule 50 on the causes of action that were dismissed. However, because plaintiff did not seek judgment as a matter of law before the case was submitted to the jury, he cannot now renew such a motion. See Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 n.5, 128 S. Ct. 2605, 2617 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury."). At oral argument, plaintiff conceded that he did not invoke Rule 50 at trial but cited Stephenson v. Doe, which nonetheless permits such a motion "if necessary to prevent 'manifest injustice.'" 332 F.3d 68, 76 (2d Cir. 2003).

In Stephenson, the Second Circuit entertained the plaintiff's Rule 50 motion for a judgment as a matter of law, which had not been raised at trial, in light of the jury's inconsistent verdict.[3] This amounted to manifest injustice because the jury had been improperly and insufficiently instructed on the law. Stephenson is easily distinguishable from this case. First, plaintiff does not argue that the jury's verdict is inconsistent.

---

[3] The jury found the defendant police officer liable for using excessive force, shooting an unarmed fleeing suspect, which a reasonable officer would have known to be unlawful. The jury then found that the officer was nonetheless entitled to qualified immunity. Id. at 78–79.

Second, plaintiff does not fault the jury instructions for the alleged manifest injustice. Third, as explained below, the jury's verdict was supported by sufficient evidence and therefore does not amount to manifest injustice.

Accordingly, plaintiff's Rule 50 motion will be denied.

### 2. Rule 59(a) Motion for a New Trial

Plaintiff also seeks a new trial pursuant to Rule 59(a) on the causes of action that were dismissed, asserting that the jury's verdict is erroneous and constitutes a miscarriage of justice. Contrary to plaintiff's assertion, the verdict in this case turned principally on witness credibility, the evaluation of which is properly left to the jury.

Plaintiff persuasively highlights several points supporting his version of the incident. Indeed, the defendant troopers provided incomplete and inconsistent accounts of the incident at various stages of the investigation and litigation.[4] They also failed to report the existence of the video evidence to internal investigators and did not make any attempt to preserve the video evidence. Further, plaintiff called several witnesses who testified that Kean and Tucker forcibly moved him across the street and threw him into a wall. Plaintiff's private investigator, Theresa Balfe, testified that the video evidence showed Kean and Tucker grab plaintiff and drag him out of the camera's view in the direction of the wall he claims to have been thrown into. Ms. Balfe also testified that she found teeth fragments

---

[4] Kean, who has since been promoted, stated in his initial incident report that he first observed plaintiff, "who was involved in the fight[,] laying on the ground next to a brick wall holding his head." This was completely contrary to his direct testimony. On the witness stand Kean testified that he yelled to disperse the agitated crowd and then observed plaintiff running downhill away from the scene, flailing his arms, and eventually falling face-first into a decorative concrete doorjamb. It is particularly troubling that Kean attempted to explain this huge discrepancy by stating he is "not a good writer" and was "not an English major."

on the sidewalk in the exact location where plaintiff claims he hit the wall, which was at least sixteen feet uphill from where defendants allege he fell into the doorjamb.

However, in view of the testimony of Kean, Reyner, and Tucker, their complete denial of any wrongdoing, and the fact that there was no direct proof that Kean or Reyner were responsible for the loss or destruction of the video evidence, the jury must have concluded that plaintiff failed to meet his burden of proof. Moreover, Ms. Balfe discovered the alleged teeth fragments on a public sidewalk over one week after the incident. Plaintiff's dentist, who was a witness at the trial, never analyzed or identified the fragments. Despite the strong evidence in his favor, plaintiff was intoxicated at the time and probably had a great deal more to drink than he admitted on the witness stand. He did suffer extensive facial injuries, but without the benefit of conclusive video evidence it is not possible to conclude that the jury's verdict was erroneous and/or a miscarriage of justice.

Accordingly, plaintiff's motion for a new trial will be denied.

## III. CONCLUSION

The jury's verdict was not internally inconsistent and was sufficiently supported by the evidence presented at trial. Further, the punitive damage award was not excessive in light of the egregious conduct by Phlip 'N Spill. Finally, as plaintiff prevailed on his § 1983 due process claim against Phlip 'N Spill, he is entitled to seek reasonable attorneys' fees and expenses.

Therefore, it is

ORDERED, that

1.  Defendant Phlip 'N Spill's motion for an amended judgment pursuant to Rule 59(e), judgment as a matter of law pursuant to Rule 50(b), new trial pursuant to Rule 59(a), and remittitur of the punitive damage award (Dkt. No. 163) is DENIED;

2.  Plaintiff's motion for judgment as a matter of law pursuant to Rule 50 and new trial pursuant to Rule 59(a) (Dkt. No. 164) is DENIED; and

3.  Plaintiff may file a motion for reasonable attorneys' fees and expenses against defendant Phlip 'N Spill, Inc., on or before November 29, 2011. Defendant Phlip 'N Spill, Inc., may answer on or before December 13, 2011. The motion will be considered on submit.

IT IS SO ORDERED.

_____
United States District Judge

Dated:   November 15, 2011
         Utica, New York.